UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN B. ALMANZAR, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>SANTANDER BANK, N.A.,<br><br>        Defendant. | 23-cv-10706 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  Plaintiff Juan Almanzar was denied a credit card from Santander Bank because he had one or more charge-offs, bankruptcies, repossessions, or judgments on his credit report. But when Almanzar requested his credit report from Experian, he saw none of those things. Almanzar sued Santander under the Equal Credit Opportunity Act (ECOA), arguing that the bank failed to provide him with notice of the actual reason why his application was denied. Almanzar moves for partial summary judgment on Santander's liability under the ECOA and to certify a class of similarly situated applicants. Meanwhile, Santander moves for summary judgment in its favor. For the following reasons, Santander's motion for summary judgment is DENIED, Almanzar's motion for partial summary judgment is GRANTED, and the motion to certify the class is DENIED.

## BACKGROUND

  In May 2023, plaintiff Juan Almanzar went to Santander Bank to apply for a loan. Dkt. 81 ¶ 1. At the time, Almanzar "believed that the Santander representative [he spoke with] understood that [he] sought to apply for a loan only." Dkt. 70 ¶ 9. Almanzar, who is not fluent in English, was "not able to read" the documents that the representative printed out, but he signed them based on his understanding that they pertained to his loan application. *Id.* ¶¶ 10–12. In fact, Almanzar applied for both a credit card and a loan from Santander Bank. *See id.* ¶ 13; Dkt. 50 ¶ 10; Dkt. 81 ¶ 1. Almanzar's loan and credit card applications were denied the same day. Dkt. 50-2 (loan denial); Dkt. 77-11 (credit card denial). Santander informed Almanzar that his credit card application was denied because Almanzar had "[o]ne or more" charge-offs, bankruptcies, repossessions, or judgments against him. Dkt. 77-11. Almanzar believed that this denial letter pertained to his loan application. Dkt. 70 ¶¶ 15–16.[1] The letter provided Almanzar the opportunity to appeal Santander's decision by written request within thirty days from the date of the notice if he believed that the decision was incorrect. Dkt. 77-11; Dkt. 74 ¶ 68.

---

[1] In fact, Almanzar's loan application was denied because of "[i]nsufficient [c]redit [e]xperience." Dkt. 50-2. He doesn't challenge that denial here.

Almanzar requested his credit report from Experian, which generated a report on June 2, 2023, showing that Almanzar had "exceptional" credit. Dkt. 53-6. Experian reported one "potentially negative month" on Almanzar's child support enforcement account. *Id.* Almanzar then wrote to Experian, requesting that Experian correct the record if it mistakenly communicated to Santander that Almanzar had a judgment, repossession, bankruptcy, or charge-off on his report. Dkt. 53-5. He did not appeal Santander's decision directly. Dkt. 74 ¶ 69.

Almanzar sued Santander on behalf of himself and all others similarly situated, alleging that Santander violated the ECOA by failing to provide "an adequate, truthful, primary or specific statement of reasons for taking adverse action." Dkt. 1 ¶ 58. After the Court denied Santander's motion to dismiss, the parties engaged in discovery, which revealed that Santander "did not deny Almanzar's credit card application because of any . . . discriminatory reasons." Dkt. 74 ¶ 58. Instead, it is undisputed that Santander submitted Almanzar's application to its FICO platform, which then pulled Almanzar's credit report from Experian. Dkt. 81 ¶¶ 5–6. Almanzar's Experian report showed a child support enforcement account with a "B0009" payment-history code. *Id.* ¶ 8. In Santander's automated system, the "9" in the Experian report corresponds to Santander's internal code "4110," which requires an application to be declined for the following reason: "One or more Chargeoff, Bankruptcy, Judgement or Repossession." *Id.* Santander automatically generated a denial letter to Almanzar, informing him that his credit card application was denied for that reason. *Id.* ¶ 11.

Almanzar moves for summary judgment on Santander's liability under the ECOA, arguing that Santander failed to provide the actual reason for its denial: Experian's use of the "9" code. *See* Dkt. 51 at 1. Almanzar also moves to certify a class of similarly situated applicants. *See* Dkt. 104 at 6. Santander cross-moves for summary judgment on multiple grounds, including that Almanzar lacks standing. *See* Dkt. 63 at 2–4.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

As for class certification, "plaintiffs must demonstrate that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(a)).

"These requirements are known as numerosity, commonality, typicality, and adequate representation." *Id.*

"In addition to satisfying these requirements, plaintiffs must . . . show that one of the three conditions of Rule 23(b) is met." *Id.* Here, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The plaintiff bears the burden of proving these requirements, which are known as "predominance" and "superiority," by a preponderance of the evidence. *See In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017).

## DISCUSSION

### I. Almanzar's motion to strike is denied.

As an initial matter, Almanzar moves to strike certain evidence from the summary-judgment record. Almanzar argues that the Court should strike (1) a family-court magistrate judge's order of support by default against Almanzar for his child-support obligations; (2) a petition by the Commissioner of Social Services against Almanzar; and (3) a "Child Support Account Resolution Notice," which lists Almanzar's payment history. Dkt. 85 at 4; *see also* Dkt. 53-2. Almanzar argues that these records "are not properly authenticated documents and as such are inadmissible as evidence." Dkt. 85 at 4. Almanzar's application is denied as moot as the Court doesn't rely on this evidence in resolving the present motions. If this case proceeds to trial, Almanzar can oppose the admissibility of this evidence if it is offered by Santander.

### II. Almanzar has raised a genuine issue of material fact as to his standing.

Santander argues that the Court should grant summary judgment in its favor because discovery revealed that Almanzar has no standing to bring this suit. "To establish standing under Article III of the United States Constitution, a plaintiff must show (1) that they suffered an injury in fact, (2) that is causally connected to the challenged conduct, and (3) that is likely to be redressed by a favorable decision." *Weisberg v. Bessent*, 2025 WL 654996, at *1 (2d Cir. Feb. 28, 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Santander says that Almanzar can't satisfy the first prong because he suffered no cognizable injury.

To satisfy the injury-in-fact requirement, an injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). As both sides agree, an "asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* at 442 (citation omitted). For Almanzar to have standing, he must identify "'downstream consequences' from failing to receive the required information." *Id.* (citation omitted).

Almanzar alleges two downstream consequences of Santander's denial: emotional distress and "the inability to correct the erroneous information or manage his credit conduct to improve his creditworthiness." Dkt. 73 at 3. Santander says that the record forecloses these claimed injuries. Dkt. 63 at 14–20.

3

The Court disagrees as to the first. Almanzar testified in his deposition that when he received the letter, he felt humiliated and distressed at the possibility that he might not be able to provide in the case of an emergency. He explained:

> I felt bad, because can you imagine? How would you feel when you hear so many lies about you? For days I was thinking[,] how am I going to fix my credit? Because when you are poor, you need your credit. How are you going to obtain things if you don't have . . . good credit?

Dkt. 53-4 at 309. Additionally, in a sworn declaration, Almanzar explained that the denial letter caused him to "feel anxious and panicked, as [he] rel[ies] on good credit in the event of unforeseen expenses or emergencies," and "because [he is] not a rich person[, i]f [he] had an emergency [he] wouldn't be able to do anything." Dkt. 70 ¶ 23. Almanzar was "really, really worried" and "couldn't sleep for many nights." Id. ¶ 24.

Santander argues that Almanzar "cannot be harmed by a letter he testifies he never received." Dkt. 63 at 14 (capitalization omitted). This is a reference to Almanzar's deposition, in which Almanzar testified that he never wanted a credit card from Santander and instead went to Santander to obtain a loan. Dkt. 53-3 at 22–23. He appeared not to know that a credit card application was submitted on his behalf and testified that he was "not affected by the fact that [he doesn't] have a credit card from Santander" but instead was "affected by . . . how they declined [his] loan." *Id.* at 30. Throughout his deposition, Almanzar repeated his position that he had never applied for a credit card, and that he had never received a denial letter related to that application. *See, e.g.*, *id.* at 34; Dkt. 53-4 at 290, 292–93. Instead, Almanzar understood the denial letter he received to be related to his application for a loan. Dkt. 53-3 at 34. After his deposition, Almanzar submitted an "errata sheet" to his deposition, in which he suggested several changes to his deposition testimony. Almanzar explained that he "went to apply for a loan and . . . ended up submitting a credit card application" by mistake, and he "did not realize that the application and adverse action notice at issue with the non-actual and non-specific reasons for the denial were in fact pertaining to a credit card application and not the loan application [he] originally intended to submit." Dkt. 52-16 at 1.

Almanzar's testimony on this issue may be messy, but some facts are not in dispute. The parties agree that a credit card application was submitted on Almanzar's behalf; that it was denied; and that the denial letter listed "One or more Chargeoff, Bankruptcy, Judgement or Repossession" as the reason for denial. The parties don't dispute that this letter was sent to Almanzar, and Almanzar specifically recalled some of the reasons in the letter for Santander's denial. *See* Dkt. 53-3 at 17 (Almanzar recalling the letter he received as saying "that [he] was in bankruptcy and all the things that [he] didn't know about"). Almanzar may have been unclear about *what* was being denied. But that doesn't matter for standing purposes, given that Almanzar isn't alleging that he was injured by the denial of the credit card itself, but rather by the emotional distress of learning that his credit might be compromised, leaving him without recourse in case of emergency. There's at least a genuine issue of material fact as to whether Almanzar suffered that injury.

4

Santander also argues that Almanzar's claim of emotional distress is too general to confer standing. *See* Dkt. 93 at 8. In *TransUnion*, the Supreme Court contemplated that "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." 594 U.S. at 436 n.7. But the Second Circuit has held that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021). In *Maddox*, the Second Circuit held that the plaintiff's attestation that she suffered "great stress, mental anguish, anxiety, and distress" was insufficient to confer standing because she "offer[ed] no reason *why* the delayed recordation [of satisfactions of mortgage]" would cause those feelings. *Id.* (emphasis added). Similarly, in *Adler v. Penn Credit Corp.*, 2022 WL 744031 (S.D.N.Y. Mar. 11, 2022), the court held that the plaintiff had failed to create a triable issue of fact about standing because he "failed to offer any detailed 'reason *why* [Defendant's actions] would cause great stress.'" *Id.* at *9 (alteration in original) (quoting *Maddox*, 19 F.4th at 66). But here, Almanzar has offered a detailed reason why the denial letter caused him stress and anguish: as a person without access to cash, he relied on his good credit in case of emergency. This isn't a situation where Almanzar's purported distress was "wholly incommensurate" with the stressor. *Maddox*, 19 F. 4th at 66. Accordingly, Santander isn't entitled to summary judgment based on standing. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) (holding that emotional distress constituted concrete injury sufficient to establish standing to sue under the Truth in Lending Act).

### III. Santander's denial letter does not provide the specific, principal reason it denied Almanzar's application.

Both parties move for summary judgment on Santander's liability under the ECOA. The ECOA entitles "[e]ach applicant against whom adverse action is taken" to "a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). "To prevail on an ECOA notice claim, a plaintiff must prove that: '(1) [the defendant] is a creditor; (2) [the plaintiff] is a loan applicant, (3) [the defendant] took adverse action with respect to [the plaintiff's] credit application, and (4) [the defendant] failed to provide the plaintiff with an ECOA-compliant notice of its adverse action.'" *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 527 (S.D.N.Y. 2015) (alterations in original) (citation omitted).

Only the fourth element is in dispute here. An adverse action notice is ECOA compliant if it "contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3). Regulation B of the ECOA's implementing regulations provides that the statement of reasons must also "indicate the principal reason(s) for the adverse action." 12 C.F.R. § 202.9(b)(2). And the Official Staff Interpretation of Regulation B provides that "[t]he specific reasons disclosed . . . must relate to and accurately describe the factors actually considered or scored by a creditor." 12 C.F.R. pt. 202, Supp. I § 202.9, ¶ 9(b)(2)-2.

The parties don't dispute the following facts: "[a]fter receiving Almanzar's [c]redit [c]ard [a]pplication, Santander's FICO platform pulled Mr. Almanzar's credit report from Experian,"

5

which provided "a series of 'Payment History' [c]odes—B0009—associated with Almanzar's Child Support Enforcement Account." Dkt. 74 ¶¶ 48–49. "FICO automatically reviewed Almanzar's Experian Credit Report and identified the B0009 Payment History codes," "recogniz[ing] that the B0009 series of codes . . . indicate[d] a serious delinquency associated with Almanzar's Child Support Enforcement Account." *Id.* ¶¶ 50–51. "Under the [Experian] Glossary, the '9' (in the B0009 series of codes) . . . correspond[s] to several other codes," which "Santander interprets . . . to represent several categories of derogatory payment history, such as chargeoff . . . or bankruptcy." *Id.* ¶¶ 54–55.

In a nutshell, Santander's automated system automatically rejected any applicant with a "B0009" code on their credit report. But instead of just telling applicants that, Santander instead conveyed its own internal interpretation of what that code means—a charge-off, bankruptcy, repossession, or judgment—without referencing the interpretation's source.

As it turns out, Santander's interpretation was off the mark. According to Experian's glossary, the "9" in the "B0009" code corresponds to eight other Experian payment-history codes: 66, 67, 86, 88, 91, 92, 93, 97. Dkt. 54-14 at 5. Experian's corporate representative, Mary Methvin, testified that the eight payment-history codes indicated by code "9" have the following meanings:

| 66 | Paid by dealer—Credit grantor paid by the company that originally sold the merchandise |
| 67 | Bankruptcy, liquidation, or reorganization—Debt included in or discharged through chapter 7, 11 or 12 bankruptcy |
| 86 | Now paying/was a charge-off |
| 88 | Government claim—Claim filed with government for insured portion of balance on loan |
| 91 | Term default—Early termination by default of original terms of lease or sales contract |
| 92 | Insurance claim—Claim filed for insured portion of the balance |
| 93 | Collection account—Account seriously past due/account assigned to attorney, collection agency or credit grantor's internal collection department |
| 97 | Charge off—Unpaid balance reported as a loss |

*See* Dkt. 54-10 at 67–74; Dkt. 54-14 at 3–4. "One or more Chargeoff, Bankruptcy, Judgement or Repossession" appears to be Santander's effort to distill these various codes into four broader categories. But these categories are both over and under inclusive, given that code "9" does not indicate a judgment under any circumstances, nor is Almanzar's specific credit event—an account seriously past due—encompassed by Santander's interpretive response.[2]

---

[2] It's not clear whether code "9" ever indicates a repossession. The Experian glossary shows that code "66" and "67" when used as "Special comment codes" can mean "Involuntary repossession" and "Involuntary repossession/Obligation satisfied," respectively. Dkt. 54-14 at 10. But Methvin testified that code "9"

6

Santander tries to salvage its defective notice by pointing out that Almanzar did in fact have a judgment against him under the Family Court Act. Dkt. 63 at 10–11. But it doesn't allege that this judgment showed up on the Experian report. Nor could it: Methvin testified that Experian "do[esn't] keep judgments on consumers' credit reports," so the B0009 code "doesn't indicate anything about judgments." Dkt. 54-10 at 108. And Santander's corporate representative, Rafael Macedo David, testified that Santander did not look up any child support enforcement documents related to Almanzar. Dkt. 54-6 at 116. So Almanzar may have a judgment against him, but no juror could find that Santander denied his credit card application because of it.

Given all this, it's clear that Santander's notice failed to meet ECOA's requirements. Under normal circumstances, indicating four concrete reasons—a charge-off, bankruptcy, repossession, or judgment—for denying a borrower's application would suffice. But in this case, Santander's notice doesn't reveal the actual reason why the bank denied Almanzar's application. Instead, it masks what happened behind the scenes: That Santander had (incorrectly, as it pertains to Almanzar) interpreted a specific account code in his Experian report as corresponding to at least one of those four adverse events.

Santander argues that it can't be held liable because Experian interprets the "9" code differently than Santander. Dkt. 93 at 1. The only thing Santander had to do, it says, is tell Almanzar *its* interpretation of the code. But the ECOA doesn't permit Santander to interpret the "9" code to mean anything it wants, while failing to disclose the source of that interpretation. Holding otherwise would effectively eliminate the notice provision's purpose: to educate "rejected credit applicants . . . [about] where and how their credit status is deficient" by providing information with "a pervasive and valuable educational benefit." *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 147 (5th Cir. 1983) (citation omitted).

So Santander failed to disclose the "specific," 15 U.S.C. § 1691(d)(3), or "principal" reason, 12 C.F.R. § 202.9(b)(2), for the adverse action taken, and it certainly failed to "accurately describe the factors actually considered or scored by a creditor." 12 C.F.R. pt. 202, Supp. I § 202.9, ¶ 9(b)(2)-2. This isn't a situation where a creditor disclosed—at a general level—the actual reason for its decision, and the grievance is one about specificity. *See, e.g.*, *Carr v. Cap. One Bank (USA) N.A.*, 2021 WL 8998918, at *8 (N.D. Ga. Dec. 8, 2021) (notice of "adverse past or present legal action" sufficient without specifying "whether the lawsuit was pending or complete, who was involved, [or] what type o[f] suit it was especially"); *Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 766 (N.D. Ill. 2018) (explanation "[i]ncome insufficient to support credit obligations" was sufficiently specific because it "unmistakably provide[d] the . . . reason for an adverse action: given the applicant's existing debt burden, her income is too low to justify the extension of additional credit"). Here, the issue is that Santander didn't tell Almanzar the real basis for its decision—the "9" code on Almanzar's Experian report—but instead simply conveyed its (incorrect) interpretation of what that code means.

---

corresponds to codes in the "Account conditions" section of the glossary, which defines "66" and "67" as set forth in the table above. *See* Dkt. 54-10 at 69–70.

Santander also argues that it doesn't matter that Almanzar had no charge-off, bankruptcy, repossession, or judgment on his credit report because "the notice provision makes no requirement regarding falsity or truth." *Ruiz v. Samuel I. White, P.C.*, 2009 WL 10687930, at *4 (E.D. Va. Nov. 9, 2009). But this is not a situation where Santander relied on inaccurate information provided to it by Experian. *See Carr*, 2021 WL 8998918, at *9 ("[T]he accuracy of the information on which a creditor [relies] is immaterial—what matters instead is whether the creditor relied on the information in taking an adverse action."); *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 836 (11th Cir. 2025) ("If the applicant learns that the creditor, in determining that the applicant's credit status was insufficient, has 'acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.'" (quoting *Fischl*, 708 F.2d at 146–47)). Rather, Santander failed to give Almanzar its actual reason for denying his application.

Santander's argument that it issued the denial letter in good faith conformity with Regulation B also fails. The ECOA specifies that a creditor is not liable for "any act done or omitted in good faith in conformity with any official rule, regulation, or interpretation thereof by the [CFPB]." 15 U.S.C. 1691e(e). Santander argues that its adverse action notice to Almanzar falls under this provision because it was modeled after the sample notification forms in Appendix C of Regulation B. Dkt. 63 at 23–24; *see also Wigod*, 338 F. Supp. 3d at 766 (holding that creditor was not liable under the ECOA because its adverse-action notice tracked the language in the sample notification forms). But Santander provided an inaccurate explanation for why Almanzar's application was denied. Whether the language used by Santander tracked the sample notification forms is irrelevant, given the mismatch between the information on Almanzar's credit report and the reasons provided by Santander.

Nor is the Court persuaded by Santander's argument that it cannot be held liable because it made an inadvertent error. *See* 12 C.F.R. § 1002.16(c). An inadvertent error is "a mechanical, electronic, or clerical error that a creditor demonstrates was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such error." *Id.* § 1002.2(s). Examples include "clerical mistake[s], calculation error[s], computer malfunction[s], and printing error[s]." 12 C.F.R. pt. 1002, Supp. I § 1002.16, ¶ 16(c)-1. Santander can't seriously contend that it unintentionally programmed its system to interpret "9" to mean "One or more Chargeoff, Bankruptcy, Judgement or Repossession."

If Santander had just indicated, at *any* level of generality, the actual reason for denying Almanzar credit—the "9" code, his payment history on his child-support account, evidence of non-payment on an obligation etc.—then there would be no issue. Santander's reason would correspond to something that Almanzar could see on his Experian report. And in fact, if Santander had given Almanzar one of these reasons, then he wouldn't have incurred any of the harms he now complains of, such as worrying if his credit was in peril because of a reported bankruptcy that he had no knowledge of.

ECOA doesn't require much in the way of detail, and it doesn't require that the creditor gets all the facts right. But it does require the creditor to tell a borrower what the actual basis for the denial of credit is. Santander didn't do that here.

8

### IV. The Court defers the question of what damages, if any, are owed to Almanzar.

Given the threshold, unresolved issue concerning Almanzar's standing, and the fact-sensitive nature of the damages inquiry, the Court defers to trial the question of what damages—including any punitive damages—are warranted in this case. The Court observes, however, that Almanzar has put forth no evidence at this juncture indicating that Santander acted in bad faith. The ECOA statute and regulation solely require providing borrowers with a "specific" and "principal" reason for a credit decision, and cases interpreting what those requirements entail are few and far between. And here, Almanzar does not assert that Santander acted with any discriminatory intent, or that the bank's use of an interpretation of a credit-report code—even if it was off the mark—was done nefariously.

### V. Almanzar has no standing to seek injunctive relief.

Santander also argues that Almanzar's prayer for injunctive relief should be dismissed for lack of standing. 15 U.S.C. § 1691e(c) provides that, "[u]pon application by an aggrieved applicant," a court "may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under [the ECOA]." Almanzar seeks equitable relief "in the form of an injunction requiring [Santander] to send ECOA-compliant notices to all members of the putative class, together with the other mandatory disclosures required by the ECOA." Dkt. 1 ¶ 61.

"A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). "That a past harm was severe or inflicts continuing damages does not change that rule: the remedy for continuing pain and suffering from a defendant's past damage is compensatory damages, as an injunction against future actions by a defendant does not remedy the harm done by that defendant's past acts." *Dorce v. City of New York*, 2 F.4th 82, 96 (2d Cir. 2021). Santander argues that Almanzar can't show any risk of future harm because of the denial letter, so he doesn't have standing to pursue his claim for equitable relief.

The Court agrees. The alleged injuries that Almanzar suffered because of the denial letter—emotional distress and difficulty correcting his credit report—already occurred. Santander does not point to any evidence indicating that these harms are likely to occur in the future. Accordingly, Almanzar has failed to establish standing to seek injunctive relief.

### VI. Almanzar's motion for class certification is denied.

Almanzar moves to certify a class under Rule 23(b)(3) of "(a.) All natural persons; (b.) residing within the geographic confines of the States of New York, Massachusetts, New Hampshire, Connecticut, Rhode Island, New Jersey, Pennsylvania, and Delaware; (c.) who applied for an extension of credit from Santander within the five years preceding class certification; (d.) to whom Santander provided an adverse action notice; (e.) which was the same as the notice sent to the Plaintiff stating the reason(s) were: one or more chargeoff, bankruptcy, judgement or repossession;

(f.) because of a '9' code appearing in an Experian consumer report . . . ; (g.) who was denied based on a reason other than a chargeoff or bankruptcy." Dkt. 104 at 6.

Almanzar's motion to certify doesn't get past the requirements of Rule 23(a). As a threshold matter, the question of Article III standing poses a serious impediment to certification given that it is a virtual certainty under *TransUnion* that Almanzar's proposed class includes members that lack standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."). But the problems don't end there.

As to adequacy, "class certification may properly be denied 'where the class representatives have so little knowledge and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Chambers v. Time Warner*, 2003 WL 749422, at *6 (S.D.N.Y. Mar. 5, 2003) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000)). That's the case here. Almanzar testified that he "never reviewed th[e] complaint with" his lawyers, Dkt. 53-3 at 25, and during his deposition he repeatedly expressed that he didn't understand several of the allegations in the complaint. *See id.*; *see also id.* at 23 ("Quite frankly, I do not understand what it says here, extension of credit. I did not go there to have a credit extended. I went to obtain a loan."). Moreover, Almanzar went into (and completed) his deposition not understanding the basic premise of his suit: that Santander denied him a credit card without sufficient explanation. Even though, as the Court concluded above, this confusion isn't dispositive of Almanzar's standing, that he was so confused calls into question his ability to serve as class representative. *See Kulig v. Midland Funding, LLC*, 2014 WL 6769741, at *3 (S.D.N.Y. Nov. 20, 2014) (named plaintiff inadequate where throughout her deposition she "demonstrate[d] great uncertainty about the facts underlying this lawsuit[] and professe[d] near-total reliance on [counsel]"). Were this case to go to trial, Almanzar "would have to devote substantial attention to overcoming [his] damaging deposition," *Woodham v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2024 WL 1216595, at *12 (S.D.N.Y. Mar. 21, 2024). Indeed, Almanzar all but concedes his inadequacy: Santander vigorously contested Almanzar's adequacy as class representative in its opposition to Almanzar's class-certification motion, and Almanzar didn't attempt to rebut those arguments on reply.

Even if Almanzar were an adequate representative, he fails to prove predominance under Rule 23(b). As an initial matter, he does not even attempt to explain how damages could be measured on a classwide basis. Instead, he disclaims any actual damages and "seek[s] only statutory punitive damages for the class." Dkt. 104 at 12. Almanzar says that "the applicable punitive damage figure is indisputably $500,000.00 requiring no further individualized assessments." *Id.* at 16. But certifying a class that relies on this "damages model" would run afoul of binding precedent. In *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003), the Supreme Court held that an excessive punitive award violated due process because it bore an insufficient nexus to the actual harm suffered by the plaintiff. *Id.* at 420–23. Months after the Court issued its decision, the Second Circuit in *In re Simon II Litigation*, 407 F.3d 125 (2d Cir. 2005), explained that "certifying a class that seeks an assessment of punitive damages prior to an actual

10

determination and award of compensatory damages . . . would fail to ensure that a jury will be able to assess an award that, in the first instance, will bear a sufficient nexus to the actual and potential harm to the plaintiff class, and that will be reasonable and proportionate to those harms." *Id.* at 138.

Almanzar insists that his damages model is permissible because multiple courts have held that "punitive damages may be awarded absent actual damages." Dkt. 116 at 3. True, "the amount of any actual damages awarded" is just one factor to consider in determining punitive damages under the ECOA, *see* 15 U.S.C. §1691e(b), and the Supreme Court has "decline[d] . . . to impose a bright-line ratio which a punitive damages award cannot exceed." *State Farm*, 538 U.S. at 425. But this isn't a case where the jury might find that there are no actual damages but award punitive damages anyway. Instead, Almanzar's "damages model" leaves actual damages out of the picture entirely. The jury can't determine an appropriate punitive damages award when it has no way of evaluating actual damages in the first place. *See In re Simon*, 407 F.3d at 138. Because Almanzar has provided no proposal for measuring actual damages on a classwide basis, determining each class member's actual damages would require an individualized inquiry.

To be sure, "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)). "The fact that damages may have to be ascertained on an individual basis [is] simply one factor that [courts have] to consider in deciding whether issues susceptible to generalized proof outweigh individual issues when certifying the case as a whole." *Id.* (cleaned up). But here, liability also requires individualized proof, given that on Almanzar's own class definition, the factfinder will have to determine whether each class member in fact had a charge-off or bankruptcy on their credit report that was the reason for the "9" code on which Santander acted.

Almanzar also gestures at certification under Rule 23(b)(2), which permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also* Dkt. 104 at 4. Almanzar says "[t]his inquiry is relevant to the injunction remedy that entitles [him] and the class to have Santander issue compliant adverse action notices stating the actual, specific and principal reasons for the adverse action." Dkt. 104 at 4–5. That's the sum total of his argument on the issue. As discussed above, Almanzar hasn't established standing to seek any injunctive remedy here, so his bid for certification under Rule 23(b)(2) also fails. *See Berni v. Barilla S.P.A.*, 964 F.3d 141, 149 (2d Cir. 2020) ("Where there is no likelihood of future harm, there is no standing to seek an injunction, and so no possibility of being certified as a Rule 23(b)(2) class.").

Finally, Almanzar says in a one-sentence argument in his reply brief that the Court should certify an issue class under Rule 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Dkt. 116 at 5. Almanzar doesn't explain why an issue class is necessary here or even

11

what "particular issue[]" is appropriate for class certification. For those reasons, the Court declines his request to certify an issue class under Rule 23(c)(4).

## CONCLUSION

For these reasons, Almanzar's motion to strike is DENIED, Santander's motion for summary judgment is DENIED, Almanzar's motion for partial summary judgment is GRANTED, and Almanzar's motion to certify the class is DENIED.

The Clerk of Court is directed to terminate Dkts. 48, 49, 84, and 103.

SO ORDERED.

Dated: August 1, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge